# ORIGINAL



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | **U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS** |
| | : | **FILED** |
| Plaintiff, | : | JUN 2 1 2006 |
| | : | |
| vs. | : | **CLERK, U.S. DISTRICT COURT** |
| | : | By_____ |
| SUNRAY OIL COMPANY, INC., | : | Deputy |
| ABILENE OIL AND GAS, L.P., and | : | |
| LARRY STILES, | : | |
| | : | |
| Defendants, and | : | |
| | : | |
| J&L DRILLING COMPANY, L.L.C., | : | |
| | : | |
| Relief Defendant. | : | |

Civil Action No.

**3-06CV1097-R**

## COMPLAINT

Plaintiff Securities and Exchange Commission files this suit against Sunray Oil Company, Inc., Abilene Oil and Gas, L.P., and Larry Stiles (collectively, "Defendants"); and J&L Drilling Company, L.L.C. ("Relief Defendant"), and alleges as follows:

## SUMMARY

1.      Defendants have conducted an unregistered and fraudulent sale of oil and gas investments, raising approximately $1.14 million from at least 52 investors residing in ten states and Canada. Defendant Larry Stiles controlled all of the corporate entities named by the Commission in this case.

2.      Defendants' offering, the Abilene Oil and Gas, L.P. (the "Abilene Offering") was structured as a limited partnership; starting in January 2005, Defendants sold securities, or limited partnership interests in the Abilene Offering, which was to acquire, explore and develop oil and gas properties in Texas.

3.      Defendants, through Sunray's website and other promotional materials, made numerous material representations to investors, and failed to tell investors material information. Most significantly, the investors were misled regarding the handling and use of their money.  For example, they were not told that Defendant Stiles planned to divert substantial amounts of investor funds for his personal use. Defendants also failed to disclose to investors that the Pennsylvania Securities Commission had issued a cease-and-desist order finding that Stiles and Sunray had committed violations of Pennsylvania's securities laws in connection with the Abilene Offering, and that the Railroad Commission of Texas ("RRCT") had levied over $700,000 in unpaid penalties and reimbursement costs against Defendant Stiles' prior oil and gas company that filed for bankruptcy.

4.      The Commission, in the interest of protecting the public from further fraudulent activities, brings this action seeking an order enjoining preliminarily and permanently the Defendants from further violations of Sections 5(a), 5(b) and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. The Commission also seeks orders requiring the Defendants Sunray and Stiles to disgorge all ill-gotten gains, plus prejudgment interest thereon, and to pay civil monetary penalties.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Complaint.

6.      Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in the Northern District of Texas.

## DEFENDANTS

7.      **Sunray Oil Company, Inc.**, an Oklahoma corporation, has offices in Addison, Texas, and is the general partner of Abilene Oil and Gas, L.P.  While its website claims a 50 year history in the oil and gas industry, its corporate existence dates only to January 2000.  The records of the RRCT, which regulates oil and gas drilling and field operations in Texas, do not show that Sunray operates any oil and gas leases or wells in Texas.

8.      **Abilene Oil and Gas, L.P.**, is a limited partnership registered with the State of Texas on May 31, 2006.   Sunray is the general partner of the partnership.

9.      **Larry Stiles**, age 56, controls all of Sunray's business affairs, including its securities offerings and the disbursement of funds. Prior to forming Sunray in 2000, Stiles ran an oil and gas company named Ginco Operating Company, which was dissolved in bankruptcy proceedings in 1999.  Over $1 million in unpaid penalties and reimbursement costs have been levied against Ginco for its failure to plug abandoned wells operated in Texas.

## RELIEF DEFENDANT

10.     **J&L Drilling Company, L.L.C.** ("J&L Drilling"), is a Texas limited liability company formed in February 2005.  J&L Drilling is purportedly a wholly-owned subsidiary of Sunray, and its only known asset is a drilling rig purchased with funds from the Abilene Offering and funds obtained from a prime bank scheme the Commission recently halted in *SEC v. EFS, LLC, et al*, Civil Action No. 3-06CV0793-M, N.D. Tex., (May 5, 2006)(Hon. Judge Barbara Lynn).  EFS, L.L.C., is a Texas limited liability corporation formed by James N. Pratt, age 65, of

Carrolton, Texas. Approximately $2.5 million was raised by the EFS defendants, of which approximately $800,000 was transferred to Sunray. EFS and Pratt shared offices with Sunray. Further, Pratt is listed as the President of Sunray in the Abilene Offering sales materials. J&L Drilling is named as a Relief Defendant solely for the purpose of obtaining equitable relief.

## FACTS

11.    Sunray began the Abilene Offering in January 2005, soliciting investors through its website, www.sunrayinvestment.com, which invited investors to "make a fortune" by participating in Sunray's "proven" oil wells. The website, by its very nature, solicited investors across the United States and in foreign countries.

12.    Stiles and Sunray commingled the Abilene Offering proceeds with funds obtained from EFS and other investors, and used approximately $500,000 to purchase oil and gas leases in Taylor County, Texas, and to drill three wells on the properties. The first well, which was drilled in April 2005, was a dry hole. Sunray drilled the second well in February 2006, which produced several hundred barrels of oil prior to May 19, 2006. This well is currently producing 30 barrels a day. The third well is awaiting completion.

13.    Although investor money was used to acquire the leases and drill three wells, Sunray and Stiles have never assigned any interest in the Taylor County leases to the Abilene Partnership which, as noted, was not formed until May 31, 2006. Instead, almost the entire working interest in the Taylor County properties has been acquired in the name of Sunray. As a result, the Abilene partnership does not have legal title to the properties that have been purchased and developed with partnership (and EFS) funds. Moreover, while the ownership interest in these properties remains in Sunray's name, the properties are subject to the claims of Sunray's and Stiles' creditors.

14.    The Abilene Offering Private Placement Memorandum ("PPM") contained, among other things, the following terms:

- 100 limited partnership units were offered at $18,000 per unit for a total offering of $1,800,000;

- The offering purportedly qualified as exempt from registration under Rule 506 of Regulation D;

- The offering was limited to accredited investors and up to 35 non-accredited investors;

- The partnership intended to acquire, develop, drill and promote oil and gas properties in Taylor County, Texas (near Abilene, Texas);

- The initial cost per partnership unit included the drilling and completion costs for two exploratory wells in Taylor County;

- Sunray, the general partner, and specifically not the limited partners, would have full, exclusive and complete discretion to control the day-to-day activities and operations of the Abilene partnership;

- Partnership units were offered on a "best efforts, no minimum" basis and the general partner planned to use proceeds as they were received without establishing a minimum level of subscriptions;

- The general partner would receive 9% of the offering proceeds for a one time management fee and would be reimbursed for any and all costs and expenses incurred on behalf of the limited partnership;

- The limited partnership would receive a 95% undivided working interest in the partnership oil and gas leases and would be entitled to 71.25 % of the oil and gas revenue generated by the partnership oil and gas properties, while the general partner would receive 3.75% of the revenue;

- Limited partners could pay an additional $100 for a "repurchase agreement," by which Sunray would repurchase partnership interests for 150% of the original investment cost, pursuant to an option exercisable five years from the execution of the repurchase agreement; and

- Sunray would fund the repurchase agreement using Abilene Partnership proceeds to purchase an A-rated "Insurance Guarantee Bond" or a financial instrument "from one of the top twenty European Banks."

## MISREPRESENTATIONS AND OMISSIONS

15.    The Abilene Offering PPM and Sunray's website contained numerous material misrepresentations and omissions. Sunray's website, for example, falsely proclaimed: "We have over 50 years experience as an independent US Oil Producer . . ." Additionally, the website characterized Sunray as "One of the Most Successful Oil & Gas Drilling Programs in the United States Today!" Further, it announced that "This Program is so Successful it Offers Investors a 150% Repurchase Agreement on Their Investment!" All of these statements are false and misleading. Neither the website nor the PPM contained any disclosure about Sunray's prior operating history, including the number of wells drilled and completed. Moreover, Sunray drilled its first well in April 2005, and that well was a "dry hole."

16.    The Abilene partnership agreement represented that "all monies received by the limited partnership from the limited partners shall be deposited in a limited partnership account or accounts which shall be maintained in the name of and for the benefit of the limited partnership." In addition, the agreement specifically provided that "limited partnership funds may be commingled with other limited partnership funds, but *not* with separate funds of the General Partner." (emphasis added) In fact, Sunray never set up a partnership bank account and all partnership subscription funds were deposited directly into Sunray's operating bank account, the same account into which the funds from EFS were deposited.

17.    Records obtained from Sunray reflect that Stiles has used the operating account as his personal bank account, spending investor funds to cover personal expenses, including $57,500 toward the purchase of automobiles, $24,900 in payments on Stiles' personal residence, $13,600 for landscaping, $29,400 for personal furniture, $19,600 on clothing and jewelry, and at

least $6,500 to Stiles' personal brokerage account. Additionally, Stiles received $72,000 in salary payments since July 15, 2005. The current balance in Sunray's account is $2,000.

18.     Furthermore, at least $200,000 from the account was used to acquire an oil and gas drilling rig operated through a purported Sunray subsidiary, Relief Defendant, J & L Drilling, LLC ("J&L Drilling"), an entity in which the Abilene investors had no legal or beneficial interest.

19.     The Abilene PPM contained no financial information concerning Sunray, including the fact that between January 2005 and April 2006, it had purportedly "borrowed" over $800,000 from EFS and had secured the loan by agreeing to assign a 50% interest in all oil and gas interests acquired by Sunray over at least a four-year period beginning January 1, 2005. The failure to disclose Sunray's financial condition was material with respect to whether Sunray could, or would, honor its agreement to repurchase an investor's partnership interest for 150% of the original investment cost after five years.

20.     Sunray represented in the PPM that it would fund the repurchase agreement by a segregated account used to purchase an insurance guarantee bond from an "A rated" insurance company, or a "Financial Instrument from one of the top twenty European Banks." The identity of the insurance company and the European banks was not disclosed, and Sunray's bank records reflect that no segregated account was established or that any insurance bond or other financial instrument was purchased to fund the repurchase option.

21.     The Defendants never disclosed to investors the existence of the RRCT orders entered against Ginco, Stiles' prior oil and gas company. Nor did they disclose to investors that on September 7, 2005, the Pennsylvania Securities Commission ("PSC") issued a summary cease and desist order alleging securities violations by Sunray and Stiles in connection with the

Abilene Offering. Despite the entry of PSC order, Defendants continued to solicit investors and failed to inform prospective investors of the existence of the PSC Order or its findings.

22.     In March 2006, Sunray began a second limited partnership offering called the Waggoner Estate Project, L.P. ("Waggoner Offering") to acquire and develop oil and gas properties in Wichita County, Texas. As of May 26, 2006, the offering had raised approximately $1.07 million from approximately 16 investors. Pursuant to instructions from Sunray's counsel, retained after the Commission began its investigation, certain funds raised in the Waggoner Offering were returned to investors. Sunray, however, did not have sufficient resources to fully refund all of the investors.

23.     To cover the recission  check issued to the Waggoner investors, Sunray used $250,000 that it obtained from Indocan Resources, Inc. ("Indocan"), a publicly-held Canadian oil and gas company, for the sale of a 15% working interest in the Abilene project (exclusive of the producing well).. Indocan purchased its interest in the Taylor County leases, which were acquired with investor funds obtained from the Abilene Offering and EFS investors, directly from Sunray rather than purchasing units in the Abilene limited partnership. According to the PPM, the Abilene partnership was to own 95% of the working interest in the Taylor County leases. The sales contract between Indocan and Sunray required Sunray to drill and complete two wells on the property. Instead, Sunray used these funds to cover checks written to two Waggoner Estate offering investors for the return of their investment. Further, the Abilene investors were never told that Sunray could, or would, continue to sell interests in the Abilene partnership (or an interest in the properties purportedly owned by the partnership) after the drilling and completion of a successful well on the partnership property. This action defrauded

those limited partners who put up the funds and assumed the risks in acquiring the Taylor county

leases and drilling the first two wells on the property.

**FIRST CLAIM**
**Violations of Section 17(a) of the Securities Act**

24.     Plaintiff Commission repeats and incorporates paragraphs 1 through 23 of this

Complaint by reference as if set forth *verbatim*.

25.     The Defendants, directly or indirectly, singly or in concert with others, in

connection with the offer or sale of securities, by use of the means and instrumentalities of

interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices

to defraud; (b) made untrue statements of material facts and omitted to state material facts

necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and (c) engaged in acts, practices and courses of business which

operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

26.     As a part of and in furtherance of their scheme, the Defendants, directly and

indirectly, prepared, disseminated or used contracts, written offering documents, promotional

materials, investor and other correspondence, and oral presentations, which contained untrue

statements of material facts and misrepresentations of material facts, and which omitted to state

material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, including, but not limited to, those set forth in

Paragraphs 1 through 23 above.

27.     With respect to violations of Section 17(a)(1) of the Securities Act, the

Defendants made the above-referenced misrepresentations and omissions knowingly or with

severe recklessness regarding the truth. With respect to violations of Sections 17(a)(2) and (3) of

the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged herein.

28.    By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
## Violations of Section 10(b) of the Exchange Act and Rule 10b-5

29.    Plaintiff Commission repeats and incorporates paragraphs 1 through 23 of this Complaint by reference as if set forth *verbatim*.

30.    The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

31.    As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 23 above.

32.    The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

*SEC v. Sunray Oil Company, Inc., et al.*
COMPLAINT
Page-10

33.   By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
### Violations of Section 5(a) and 5(c) of the Securities Act

34.   Plaintiff Commission repeats and incorporates paragraphs 1 through 23 of this Complaint by reference as if set forth *verbatim*.

35.   Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

36.   As alleged in paragraphs 1 through 23, the investments described in detail herein, have been offered and sold to the public through a general solicitation of investors.   No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

37.   By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM
### Claim Against Relief Defendant as Custodian of Investor Funds

38.     Plaintiff Commission repeats and incorporates paragraphs 1 through 23 of this Complaint by reference as if set forth *verbatim*.

39.     Relief Defendant received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants, as alleged in paragraphs 1 through 23 above.

40.     Relief Defendant obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 23 and under circumstances in which it is not just, equitable or conscionable for it to retain the funds and property.  As a consequence, Relief Defendant was unjustly enriched.

### RELIEF REQUESTED

41.     Plaintiff respectfully requests that this Court:

(a)     Enter emergency orders freezing the assets of Defendants and the Relief Defendant and appoint a receiver over these entities to take possession of the assets of each for the protection of investors.

(b)     Preliminarily and permanently enjoin all Defendants from violating Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

(c)     Order Defendants Sunray and Stiles to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus

prejudgment interest on that amount, and order the Relief Defendant to disgorge all assets in its possession traceable to investor funds it received from the Defendants.

        (d)     Order civil penalties against Defendant Sunray and Stiles pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

        (e)     Such further relief as this Court may deem just and proper.

Respectfully submitted,

STEVE KOROTASH
Oklahoma Bar No. 5102
SECURITIES & EXCHANGE
COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas  76102
(817) 978-6490
FAX:  (817) 978-4927

JS 44(Rev 11/04)

## CIVIL COVER SHEET 3-06CV1097-R

ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I.(a) PLAINTIFFS
**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

### DEFENDANTS
**SUNRAY OIL COMPANY, INC., ABILENE OIL AND GAS, L.P. AND LARRY STILES, DEFENDANTS; J & L DRILLING COMPANY, L.L.C. RELIEF DEFENDANT.**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED

JUN 2 1 2006

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen J. Korotash
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6490

ATTORNEYS (IF KNOWN)
Wayne Secore/ Gene Bensen
Secore & Waller, LLP
Drive, Suite 1100
Dallas, Texas 75201
Counsel for Sunray, Abilene & J&L

Patrick Craine/ Terence J Hart
Munsch Hardt Kopf & Hart, PC
3800 Lincoln Plaza, 500 N. Akard Street
Dallas, Texas 75201
Counsel for Stiles

### II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINT AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | PTF | | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Manne | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R R & Truck | | ☐ 470 Racketeer Influenced |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs | | and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| Student Loans (Excl. Veterans) | ☐ 340 Manne | **PERSONAL PROPERTY** | ☐ 690 Other | **PROPERTY RIGHTS** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | ☐ 345 Manne Product | ☐ 370 Other Fraud | | ☐ 820 Copy nghts | ☒ 850 Securities |
| of Veteran's Benefits | Liability | ☐ 371 Truth in Lending | | ☐ 830 Patent | Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | ☐ 840 Trademark | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | Property Damage | | | 12 USC 3410 |
| ☐ 195 Contract Product Liability | Product Liability | ☐ 385 Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal | Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 891 Agricultural Acts |
| | Injury | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization A |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | | Information Act |
| | | | ☐ 791 Empl Ret. Inc | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | Determination Under |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U S Plaintiff or | Equal Access to Justic |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party | State Statutes |
| | Rights | ☐ 550 Civil Rights | | 26 USC 7609 | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (Specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judge

### VI. CAUSE OF ACTION CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Brief Description of cause:  Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] ("Securities Act") an Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] ("Exchange Act"), and Rule 10b-5 thereunder [17 C.F.R. § 240.10 5].

### VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES     ☐ NO

### VIII. RELATED CASE(S) (See Instructions):

IF ANY        JUDGE **Hon. Barbara Lynn** DOCKET NUMBER **3:06-CV-0793-M**

DATE 6-20-06

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

Receipt #_____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____